IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON HAWKINS,<br><br>          Plaintiff,<br><br>    v.<br><br>DERRAL G. ADAMS, et al.,<br><br>          Defendants. | Case No. 1:09-cv-00771 JLT (PC)<br><br>AMENDED ORDER GRANTING MOTION FOR ATTENDANCE OF INCARCERATED WITNESSES AT TRIAL<br><br>(Doc. 86) |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. On January 11, 2013, the Court issued its order granting in part Plaintiff's motion for attendance of incarcerated witnesses. (Doc. 91)  In that order, the Court ordered that inmate Langston—sought by Plaintiff to testify at trial—would be produced via video conference. Id.  However, since that time, prison officials at Kern Valley State Prison have communicated with the Court and indicated that, because they do not own their own video conference equipment, they cannot ensure that Langston can be produce via that method.  Thus, the Court issues this amended order and **GRANTS** Plaintiff's motion that inmate Langston be produced at the time of trial for testimony.

**I.    Background**

This action is proceeding on Plaintiff's second amended complaint filed February 2, 2011.

1

(Doc. 32) The events at issue in this action occurred at the Corcoran State Prison on June 29, 2009. Id. at 3.

On that date, Plaintiff alleges Defendant used excessive force while escorting him from a shower cell. Doc. 32 at 3. Plaintiff alleges that when he exited the shower cell, he stomped his feet to removed excess water to prevent him from slipping. Id. Plaintiff alleges that in response, Defendant slammed him face first onto the floor, which caused him personal and psychological injuries. Id. at 4.

Along with his motion, Plaintiff submits a declaration from inmate Langston.[1] (Doc. 86 at 6) Langston asserts he saw Defendant roughly yank Plaintiff from the shower cell, which caused Plaintiff to slip. Id. Next, he saw Castillo push Plaintiff "real hard in the back" and heard a thump. Id. A few minutes later, he saw the floor officers escort Plaintiff away. Id.

On September 27, 2012, the Court issued its second scheduling order. (Doc. 80) This order required Plaintiff to file a request to have incarcerated witnesses transported, if he wished to do so. Id. at 2-3. For each inmate-witness, Plaintiff was required to demonstrate the person had personal knowledge of the events at issue and either that the witness is willing to testify or he is not. Id.

**II.    Analysis**

Defendant argues that Langston offers nothing toward the resolution of the case. (Doc. 90 at 2) To the extent that it is undisputed that Castillo pushed Plaintiff, the Court agrees that Langston's testimony adds nothing on that topic. Id. However, Langston also attests that he saw Castillo "rough[ly] yank" Plaintiff's arm. (Doc. 86 at 6) This could support Plaintiff's claim that he did not take any aggressive or resistive action and, instead, it was Defendant who used unnecessary force from the outset of the contact.

Unlike in Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir.1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472, 501 (1995), where the plaintiff refused to describe

---

[1] Oddly, inmate Langston fails to include his first name on the declaration. However, the CDCR Inmate Locator indicates that the inmate assigned to CDCR # D56567 is Heath Edward Langston and he is currently housed at Kern Valley State Prison. Much of this information is confirmed by Defendants. (Doc. 90-2 at 1)

2

his inmate-witness' testimony, here, Langston's declaration, while sparse, sets forth a basis for his personal knowledge of certain facts which may be important to this case.  Thus, the Court cannot find that Langston's testimony would not further resolution of the matter.

On the other hand, Defendant submits information that Langston is a significant security risk. (Doc. 90 at 2-3)  Defendant asserts that Langston is a man of violence, having been incarcerated since at least 1988 due to a conviction for attempted murder of a peace officer while attempting a "prison break" of another inmate. (Doc. 90 at 2)  Langston is serving a term of life and, due to 40 rules violations, of which 21 involved acts of violence--4 against peace officers--he is classified as a maximum security inmate. Id.  The evidence demonstrates that the CDCR considers Langston to be a serious risk to the safety of others and, due to the number of officers needed to transport him to court, the cost for the one-day trip is not inconsequential. Id.  On the other hand, impliedly, the CDCR is concerned about security risks posed by transporting Langston to a specified location on a publicly known date, presumably due to escape risks. Id.  Though Defendant fails to detail the dates on which these rules violations occur such that the Court can evaluate the recency of Langston's problematic conduct, his security classification score supports the claim that he remains a current security risk.

Compounding this situation is the fact that Plaintiff makes no representation whether Langston has agreed to testify in this case.  The declaration Langston signed does not so indicate and, though this litigation was initiated in April 2009, the original complaint—filed two months *before* the subject incident—was completely unrelated to it, though it raised a similar incident against a different correctional officer.  Thus, there is no way to infer that Langston was even aware that he could be or would be called to testify or that he is now willing to do so.

However, the Federal Rules of Civil Procedure permit testimony in open court from a different location "[f]or good cause in compelling circumstances and with appropriate safeguards." Fed.R.Civ.P. 43(a); Beltran–Tirado v. Immigration and Naturalization Services, 213 F.3d 1179, 1186 (9th Cir.2000). In its previous order, the Court found compelling circumstances to require the testimony of Heath Langston by video conference.

However, since that time, on January 15, 2013, Will Adams, an official from Kern Valley

State Prison, has communicated with court staff and reported that Kern Valley does not have video equipment for video-conferencing. Though Mr. Adams has "reserved" equipment—from an unknown source--to use on the date of trial, he reports there is no certainty that the equipment will be available on the date of trial.

In fairness, the Court cannot allow Plaintiff's ability to prove his case be jeopardized due to the prison's inability to ensure compliance with the Court's previous order. Therefore, the Court now **GRANTS** Plaintiff's motion and will order Inmate Langston to be produce at the time of trial for his testimony.

## ORDER

Based upon the foregoing, the Court **ORDERS**:

1. Plaintiff's motion for attendance of incarcerated witness (Doc. 86) is **GRANTED.**

IT IS SO ORDERED.

Dated: **January 23, 2013**              /s/ Jennifer L. Thurston
                                          UNITED STATES MAGISTRATE JUDGE